UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NEIL J. GILLESPIE,

               Plaintiff,

-vs-                                    Case No.  5:05-cv-362-Oc-10GRJ

HSBC NORTH AMERICA HOLDINGS,
INC., a Delaware corporation; HSBC BANK
NEVADA,N.A., a National Bank
formerly known as Household Bank (SB), N.A.;
RISK MANAGEMENT ALTERNATIVES,
INC., a Delaware corporation,

               Defendants.

_____

# O R D E R

The Plaintiff, proceeding *pro se*, has filed suit against the Defendants alleging violations of the Consumer Credit Protection Act, 15 U.S.C. §§ 1640(e) and 1692k,[1] the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and Florida law, with respect to various charges and fees assessed against the Plaintiff's credit card account.  (Doc. 22).   The case is before the Court for consideration of Defendants HSBC North America Holdings, Inc.'s and HSBC Bank Nevada, N.A.'s motions to dismiss, (Docs. 4, 29), to which the Plaintiff has filed a response

---

[1]Although the Plaintiff lists the Consumer Credit Protection Act in the first paragraph of his First Amended Complaint, (Doc. 22), he does not allege any claims under the Act, or otherwise mention the Act.  Therefore, the Court will not further address the Consumer Credit Protection Act in this Order.

in opposition (Doc. 5).  Upon review of the Amended Complaint and the record in this case,

the Court finds that the motions to dismiss are due to be granted in part and denied in part.

### Factual Background

The following facts are alleged in the Plaintiff's First Amended Complaint (Doc.  22)

and are taken as true for the purposes of the motion to dismiss.  The Plaintiff, Neil J.

Gillespie, is a resident of Ocala, Florida.   On February 27, 2003, Gillespie opened a

MasterCard credit card account, issued by Defendant HSBC Bank Nevada, N.A., f/k/a

Household Bank (SB), N.A. ("HSBC Nevada").  Defendant HSBC North America Holdings,

Inc. ("HSBC North America") is the parent company of HSBC Nevada.

At the time Gillespie opened the account, HSBC Nevada charged him a $59.00

annual fee.  The initial credit line for the credit card was $300.00.  Gillespie maintained his

credit card account in good standing and received credit line increases to $400,00, then

$500,00, and again to $600.00 over the next year.  In mid-2004, Gillespie decided to close

his credit card account and pay off any remaining balance.  By letter dated June 9, 2004,

HSBC Nevada notified Gillespie that his account had been closed.  Due to the busy 2004

Hurricane season, Gillespie chose to reinstate his credit card account in order to pay for

hurricane related expenses.  A $29.00 reinstatement fee posted to Gillespie's account on

September 6, 2004.

On or about September 2, 2004, Gillespie requested, by telephone, an increase in

his credit line.  In a letter dated September 6, 2004, HSBC Nevada agreed to increase his

2

credit limit to $800.00, provided that Gillespie pay in advance a $50.00 "automated credit line increase" fee.  HSBC Nevada told Gillespie that the $50.00 fee would later be credited back to his account, and that he should make his check for the fee payable to "ACLI."  Gillespie mailed a $50.00 money order payable to "ACLI" to HSBC Nevada on September 7, 2004.

Gillespie contends that HSBC Nevada never credited the $50.00 "automated credit line increase" fee back to his account.  Instead, HSBC Nevada charged Gillespie's credit card account a $50.00 credit line increase finance charge on September 9, 2004, then reversed the fee the same day.  According to Gillespie, these two transactions cancelled each other out, and did not take into account the $50.00 fee he had already paid and was promised would be credited to his account.  Gillespie contends that HSBC Nevada's actions constitute a "slight-of-hand theft."[2]

While his account remained open, and throughout the entire dispute process, HSBC Nevada continued to mail Gillespie monthly account statements, each providing a 24-hour automated account information telephone number.  On September 11, 2004, Gillespie left Florida in order to avoid Hurricane Ivan, and traveled to Ooltewah, Tennessee.  During this trip, Gillespie used his credit card for various travel-related expenses.  He relied upon HSBC Nevada's 24-hour automated account information telephone number to ensure that his credit card balance remained within the credit limit.

---

[2]See Amended Complaint, (Doc. 22), ¶ 22.

Gillespie contends that the automated account information telephone number provided him with incorrect balance information, such that he unknowingly exceeded his credit limit and was penalized with various overlimit fees.  His September 20, 2004 credit card statement showed an overlimit balance of $161.62, the majority of which was attributable to various  bank fees.[3]  If Gillespie had received accurate information concerning his account balance, and if he had received a credit on his account for the $50.00 "automated credit line increase" fee, Gillespie argues that he would not have exceeded his credit limit.

On November 13, 2004, Gillespie notified HSBC Nevada in writing that he was closing his account.  In his letter, Gillespie agreed to pay all legitimate charges, including those for purchases, cash advances, cash advance fees, and lawful interest. He objected, however, to paying any overlimit fees and late fees resulting from the allegedly inaccurate account balance information provided by HSBC Nevada's automatic telephone service. Gillespie also requested an updated account statement within 30 days.

By letter dated November 29, 2004, HSBC stated that Gillespie's new account balance was $1,121.27 and demanded immediate payment of $355.  Gillespie did not pay this amount, and returned the letter with various comments to the Chief Operating Officer of HSBC Bank USA, N.A.

---

[3]See Doc. 22, exhibit 2.

On December 6, 2004, HSBC Nevada sent Gillespie a Delinquent Account Notice demanding payment of his account balance, which had reached $1,150.27.  Gillespie telephoned HSBC Nevada on December 20, 2004 to dispute the balance.  HSBC Nevada again contacted Gillespie by letter dated December 31, 2004.  This letter notified Gillespie that his account had been canceled effective October 7, 2004.  However, HSBC Nevada continued to charge Gillespie the $59.00 annual fee on March 20, 2005, and charged a $29.00 late fee and $29.00 overlimit fee every month.

On or about December 31, 2004, HSBC Nevada placed Gillespie's account for collection with Defendant Risk Management Alternatives, Inc. ("RMA"), a collection agency with its headquarters in Duluth, Georgia.  RMA contacted Gillespie by letter dated January 3, 2005, notifying Gillespie that it was HSBC Nevada's debt collector on this account, and demanding payment in the amount of $1,174.74.  That same day, Gillespie received a telephone call from a Roger Harrison at RMA offering to settle the entire dispute for $900.00.  Gillespie immediately agreed to the settlement, and agreed to send an initial payment of $135.00 by January 25, 2005, with payment of the remaining $765.00 balance in February 2005.

Gillespie sent the $135.00 payment on January 15, 2005, ten days ahead of schedule.  He spoke with a Holly Reynolds at RMA, who confirmed the terms of the settlement and provided Gillespie with RMA's receive code to accept the payment.  Despite this settlement agreement, and Gillespie's initial payment, RMA continued to call Gillespie another 21 times throughout the month of January, 2005.

5

On January 24, 2005, RMA called Gillespie and informed him that RMA would no longer accept the settlement agreement and demanded payment of $1,089.27.  RMA called Gillespie again on January 25, 2005, demanded the same payment, and threatened to call Gillespie's family if he did not pay the entire $1,089.27 immediately.  RMA also claimed to have contacted Gillespie's uncle, which was not true, as Gillespie's uncle had passed away a short time before.  Gillespie eventually changed his telephone number to an unpublished number to avoid any further contact with RMA.

On January 20, 2005, HSBC Nevada provided Gillespie with an account statement listing a payment of $135.00, and demanding a payment of the remaining balance of $1,089.79.  The statement did not mention the settlement with RMA.  HSBC Nevada also charged Gillespie another $29.00 overlimit fee and assessed a $21.05 finance charge.

On January 31, 2005, Gillespie wrote to Martin Glynn, President and Chief Executive Officer of HSBC Bank USA, one of HSBC Nevada's parent companies.  In the letter, Gillespie discussed the alleged harassment and threats from RMA, including the fact that RMA broke its settlement agreement with Gillespie.  He also stated that any further settlement offers must be made in writing.  Jory Berdan of Household Bank Credit Card Services responded to Gillespie by letter dated February 24, 2005, acknowledging RMA's breach and offering to settle Gillespie's account.  The terms of the new settlement offer are not mentioned in the Amended Complaint, although Gillespie states that they were contradicted by later HSBC Nevada correspondence.

6

To date, it does not appear that Gillespie has made any further payments on his account.  HSBC Nevada has continued to assess late fees, overlimit fees, annual fees and interest on the credit card account.  As of July 20, 2005, the outstanding balance had reached $1,675.21.

### Procedural History

Gillespie initiated this action on August 17, 2005 (Doc. 1).  In his original Complaint, Gillespie alleged three claims against HSBC Nevada: (1) a state law claim for fraud, based on the alleged "slight-of-hand theft" over Gillespie's $50.00 "automated credit line increase" fee; (2) a claim that HSBC Nevada violated various provisions of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), by failing to disclose in advance the various fees and finance charges it assessed against Gillespie, and by failing to provide Gillespie with accurate account balance information; and (3) a state law claim alleging violations of Florida's usury laws.  Gillespie also asserted a claim against RMA, alleging that RMA's collection activities violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* He seeks as relief compensatory damages, punitive damages, statutory damages, interest, costs, expenses, and attorneys' fees.

On October 17, 2005, HSBC North America and HSBC Nevada filed a joint motion to dismiss all claims against them.  (Doc. 4).  Gillespie filed a response in opposition on November 4, 2005 (Doc. 5).  Before the Court could consider the motion, Gillespie sought and obtained leave to file an Amended Complaint (Docs. 8, 12).  The Amended Complaint

is identical in all respects to the original Complaint, with one exception.  Gillespie has added a common law claim of negligence against HSBC Nevada, apparently based on HSBC Nevada's alleged hiring of RMA to act as its debt collector.  Neither the original or the Amended Complaint allege any claims against HSBC North America.

In granting Gillespie leave to file his Amended Complaint, the Court also provided that HSBC North America's and HSBC Nevada's motion to dismiss (Doc. 4) would apply to the Amended Complaint, and granted leave to file another motion to dismiss focused solely on the new negligence claim.  (Doc. 12).  HSBC North America and HSBC Nevada did so on April 5, 2006.  (Doc. 29).  Gillespie has never responded to this second motion to dismiss and the time for responding has elapsed.

On July 7, 2005, approximately six (6) weeks prior to Gillespie filing this suit, RMA filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330.  On September 6, 2005, RMA filed a Notice of Pendency of Bankruptcy Case and Automatic Stay of Proceedings with this Court.  (Doc. 2).  As such, all claims against RMA are stayed pending notice that the automatic stay in the bankruptcy proceeding has been lifted.

## Motion to Dismiss Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."  Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv. 400 F.2d

465, 471 (5th Cir. 1968).  Thus, if a complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead.  Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).  As the Supreme Court declared in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." See also Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47.  Instead, all that is required is that the claimant set forth a "short and plain statement of the claim" sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

    In addition, when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is limited to a review of the allegations set forth on the face of the complaint itself, as well as any attached and/or incorporated documents which are central to the plaintiff's claim. Brooks v. Blue Cross & Blue Shield of Florida, 116 F.3d 1364, 1369 (11th Cir. 1997).  Review of such incorporated documents will not convert a

9

motion to dismiss into a motion for summary judgment.  Id., see also  Harris v. Ivax Corp.,
182 F.3d 799, 802 n. 2 (11th Cir.1999).   However, the Court will not consider factual
arguments made in motions or other papers, or other evidence not attached or
incorporated by the face of the complaint itself.

## Discussion

I.    Claims Against HSBC North America

Defendant HSBC North America seeks to be dismissed from this case because
Gillespie has not alleged any claims against it.  It appears from the face of Gillespie's
Amended Complaint that HSBC North America is a separate and distinct entity from HSBC
Nevada.[4]  It is also clear from the Amended Complaint that Gillespie has not made any
allegations against HSBC North America other than to aver that it is the parent company
of HSBC Nevada.  Thus, it would appear that dismissal of HSBC North America is
appropriate.

Normally, a parent corporation is not liable for the acts of its subsidiaries.
See United States v. Bestfoods, 524 U.S. 51, 61 (1998).  Gillespie, however, argues in his
opposition that HSBC North America should remain in this case because it is the "head of
the hydra."  See Doc. 5, p. 3.  While not entirely clear, it appears that Gillespie is arguing
that HSBC North America, in its role as parent of HSBC Nevada, either exercised some
sort of control over the actions of HSBC Nevada in this case, or should be held vicariously

---

[4]See Doc. 22, ¶ 4.

liable for the actions of HSBC Nevada.[5]  However, Gillespie has made no such allegations

in his Amended Complaint.  Indeed, none of the five claims even mention HSBC North

America.  Given the complete absence of any allegations or claims in the Amended

Complaint against HSBC North America, the Court concludes that dismissal without

prejudice of HSBC North America is appropriate.

II.    Claims Against HSBC Nevada

    A.    **Fraud Claim**

HSBC Nevada seeks dismissal of each of Gillespie's claims against it.[6]  The first

claim against HSBC Nevada is a state law claim for fraud.  HSBC Nevada asserts that

dismissal is appropriate because Gillespie has failed to state a claim upon which relief can

be granted pursuant to Fed.R.Civ.P. 12(b)(6), and because Gillespie has not alleged his

fraud claim with the sufficient level of particularity required by Fed.R.Civ.P. 9(a).

To allege a claim of common law fraud in Florida, Gillespie must allege: (1) a false

statement concerning a material fact; (2) knowledge by the person making the statement

that the representation is false; (3) the intent by the person making the statement that the

---

[5]There are three ways in which a parent can be held liable for the acts of its subsidiaries: (1) an alter ego theory to "pierce the corporate veil;" (2) vicarious liability based on general agency principles; or (3) direct liability where the parent directly participated in the wrong complained of.  See In re Managed Care Litigation, 298 F. Supp.2d 1259, 1309 (S.D. Fla. 2003).  Gillespie has not alleged any facts in his Amended Complaint to support any of these theories.

[6]In his original complaint, Gillespie asks the Court to mail a copy of the complaint to United States Senator Richard Shelby and John C. Dugan, Comptroller of the Currency.  (Doc. 1).  In its first motion to dismiss, HSBC Nevada asks the Court to strike this request on the grounds that it is impertinent and scandalous.  Gillespie has omitted this request in his Amended Complaint, therefore it is no longer a part of this case, and HSBC Nevada's request is denied as moot.

representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party.  Knight v. E.F. Hutton and Co., Inc., 750 F. Supp. 1109, 1114 (M.D. Fla. 1990) (citing Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984)).  See also Romo v. Amedex Ins. Co., 930 So.2d 643, 651 (Fla. 3d DCA 2006); Hillcrest Pacific Corp. v. Yamamura, 727 So. 2d 1053, 1055 (Fla. 4th DCA 1999).  HSBC Nevada contends that Gillespie has not sufficiently alleged either a false statement of a material fact, nor any injury attributable to his reliance on HSBC Nevada's statements.  The Court disagrees.

Gillespie's fraud claim centers on the representations made by HSBC Nevada concerning his $50.00 "automated credit line increase."  Gillespie alleges that HSBC Nevada told him that if he made that payment in advance, it would be later credited back to his account and he would receive a credit limit increase.  In other words, he would receive a refund of his $50.00 payment.  According to the Amended Complaint, while Gillespie did receive the credit limit increase,[7] he never received a refund of the $50.00.  Instead, HSBC Nevada charged his credit card account an additional $50.00 fee, and reversed that charge.  Simply put, HSBC Nevada double charged Gillespie for the credit line increase, and only credited him back for one of the charges.  The partial copy of Gillespie's September 20, 2004 account statement further demonstrates this fact.[8]  The fact that HSBC Nevada did not credit Gillespie as it stated it would, thereby resulting in a loss

---

[7]See Doc. 22, ¶¶ 18.a., 21, and exhibit 2.

[8]Id., exhibit 2.

of the $50.00 and additional charges to Gillespie's account, establishes both a false statement of a material fact and a resulting injury.[9]

The Court further finds that Gillespie has satisfied the heightened pleading requirements of Fed.R.Civ.P. 9(b). He has stated with particularity all of the circumstances constituting the alleged fraud in this case. More specifically, Gillespie has identified the precise statements he alleges are false or misleading, including the time place and identity of speaker; how he was mislead by those statements; and what HSBC Nevada obtained as a consequence of the alleged fraud, *i.e.*, the additional $50.00 as well as other subsequent charges and fees. Although Gillespie's fraud claim could have been read as HSBC Nevada contends - that the $50.00 promised credit was really just a reversal charge - if a complaint "shows that the Plaintiff is entitled to <u>any</u> relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead. <u>Dotschay v. Nat. Mut. Ins. Co.</u>, 246 F.2d 221 (5th Cir. 1957). Gillespie's fraud claim may go forward as alleged.

### B.    Truth in Lending Act Claim

Gillespie also alleges that HSBC Nevada violated numerous provisions of the TILA throughout the existence of his credit card account, including after his account was closed.

---

[9]The Court seriously questions whether Gillespie will be able to establish that the other overlimit fees, late fees, and finance charges are a direct result of this allegedly false statement. However, that is a discussion for another time, and at the very least, Gillespie has sufficiently alleged damages in the amount of the $50.00 "automated credit line increase fee" which permit this claim to go forward.

For example, Gillespie contends that HSBC Nevada did not comply with the TILA's disclosure requirements when it solicited him over the telephone to open his credit card account in February 2003.[10]  He also contends that HSBC Nevada violated the TILA's disclosure requirements in September 20, 2004 when it did not refund his $50.00 "automated credit line increase" fee, and as a result of not crediting his account for this amount, did not provide him with the correct account balance, total amount of credits to his account, the correct finance charge, and did not correctly identify and credit other charges.[11]  Gillespie alleges that HSBC Nevada violated these same disclosure requirements in each subsequent monthly statement.[12]

Gillespie also challenges HSBC Nevada's 24-hour automated account information telephone line, stating that it provided him false and inaccurate account balance information, and failed to disclose that reliance on such information would result in finance charges and overlimit fees.[13]  He also contends that HSBC Nevada failed to identify that his $135.00 payment on January 15, 2005 was made as part of a settlement agreement, and failed to include any of the terms and conditions of his February 24, 2005 settlement

---

[10]See Doc. 22, ¶¶ 58-59; 15 U.S.C. § 1637(c)(2).

[11]See Doc. 22, ¶¶ 60-61; 15 U.S.C. §§ 1637(b)(3), (4), (7), and (8).

[12]See Doc. 22, ¶ 70.

[13]See Doc. 22, ¶ 62; 15 U.S.C. § 1637(a).

agreement in any of his future account statements.[14]   Finally, Gillespie asserts that HSBC

violated the TILA when it failed to disclose that he would be charged annual fees, overlimit

fees, and late fees on a closed account in violation of 15 U.S.C. §§ 1637(a), (c) and (d).[15]

Taking the allegations set forth in Gillespie's Amended Complaint as true, which the

Court must at the motion to dismiss stage, and refraining for passing on the merits, it

appears that the majority of Gillespie's TILA claims are properly alleged, and provide a

clear and plain statement  sufficient to place HSBC Nevada on notice of the allegations

against it.    Indeed, HSBC Nevada does not challenge many of Gillespie's assertions.

Rather, HSBC Nevada limits its challenges to Gillespie's claims concerning the September

20, 2004 account statement.   According to HSBC Nevada, the portion of Gillespie's

September 20, 2004 account statement which is attached to his Amended Complaint

directly contradicts his allegations that HSBC Nevada did not credit back the $50.00

"automated credit line increase" fee  on his September 20, 2004 account statement,[16] and

did not disclose the correct amount of credits and charges on that same statement.[17]

---

[14]See Doc. 22, ¶¶ 67, 70.

[15]Id., ¶¶ 63-66

[16]15 U.S.C. §1666c provides that all payments received from an obligor under an open ended consumer credit plan by the creditor shall be posted promptly to the obligor's account.

[17]HSBC Nevada also seeks to use the September 20, 2004 account statement to disprove Gillespie's contentions that HSBC Nevada did not disclose it would charge overlimit and late fees on closed or cancelled accounts.  However, that statement was created while Gillespie's credit card account was open and active.  Therefore it does not establish any disclosures with respect to closed or cancelled accounts.

Because the Court has already found that, from the face of Gillespie's Amended Complaint and incorporated documents, Gillespie has sufficiently alleged that HSBC Nevada did not credit his account for that $50.00 fee as promised, the Court is satisfied at this stage in the litigation that Gillespie has also sufficiently alleged that HSBC Nevada improperly failed to disclose its credit of the $50.00 "automated credit line increase" fee and did not provide the correct balance, credits and charges on the September 20, 2004 account statement.[18]   Accordingly, Gillespie's TILA claim may go forward as alleged.

## C.    Usury Claim

The third claim HSBC Nevada challenges is Gillespie's assertion that HSBC Nevada violated Florida's usury law, Fla. Stat. § 687.01, *et seq.*    HSBC Nevada contends that this claim should be dismissed both because Gillespie has not pleaded any of the elements necessary to establish a claim of usury, and because Florida law does not apply to Gillespie's credit card account.  The Court agrees.

Under Florida's usury law, it is considered "usurious and unlawful" to charge a rate of interest in excess of 18% for any loan, money advance, line of credit, or other obligation

---

[18]HSBC Nevada argues that if this claim is not dismissed with prejudice, the Court should order Gillespie to provide a complete copy of his September 20, 2004 account statement.  The Court will deny this request.  The portion of the statement provided with the Amended Complaint supports all of Gillespie's allegations such that dismissal is not appropriate.  Moreover, if HSBC Nevada believes that this is an incomplete document and that other portions of the document are necessary at this point in the litigation, it could have easily attached them to its own motion to dismiss.  Gillespie is correct, HSBC Nevada, as the lender in this case, has just as much access to Gillespie's account statements as Gillespie does.  HSBC Nevada has not demonstrated that it will suffer any undue hardship by producing the complete account statement, and the Court doubts that it could, given that it readily submitted Gillespie's Cardholder Agreement.

where the principal balance is $500,000 or less.  <u>See</u> Fla. Stat. § 687.03(1).  A creditor who willfully violates Florida's usury law is liable to the borrower for double the amount of interest collected.  <u>See</u> Fla. Stat. § 687.04; <u>Jersey Palm-Gross, Inc. v. Paper</u>, 639 So.2d 664, 667 (Fla. 4th DCA 1994).  Although Gillespie cites to the correct Florida statutes, he does not explain how his credit card account with HSBC Nevada violates this law. Gillespie alleges that HSBC Nevada charged him a nominal interest rate of 18.9%, an annual percentage rate of 22.9%, and periodic interest rates as high as 224%.[19]  Not only does Gillespie fail to explain how he arrived at these interest rates, but the partial copy of his account statement which he attached to his Amended Complaint directly contradicts his allegations.[20]  That statement lists a finance charge of $10.72 on a balance of $494.85. Simple math shows that the nominal interest rate charged is well under 18%.  Even if Gillespie is correct that all of his late fees, cash advance fees, and overlimit fees also constitute interest, the nominal interest rate would still only amount to approximately 13.9%.[21]   Given the contradictions between Gillespie's account statement and the allegations in his Amended Complaint, the Court cannot say that he has properly alleged a claim of usury.[22]

[19]Doc. 22, ¶ 91.

[20]<u>Id.</u>, exhibit 2.

[21]The September 20, 2004 statement listed miscellaneous finance charges of $58.26, as well as the monthly finance charge of $10.72.

[22]In his opposition papers, Gillespie contends that his March 20, 2003 account statement
(continued...)

Even if Gillespie had established that HSBC Nevada exceeded Florida's 18% interest rate cap, this claim fails for a more basic reason.   Gillespie's Cardholder Agreement with HSBC Nevada clearly states that it is governed by Nevada law.[23] Specifically, the Agreement states that Gillespie's credit card account "will be governed by federal law and the laws of the state of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada."[24]   Under Nevada law, "[p]arties may agree for the payment of any rate of interest on money due or to become due on any contract, for the compounding of interest if they choose, and for any other charges or fees," so long as the interest rates, fees and other terms are reduced to writing.   NV Stat. § 99.050.   See also, Mapes v. Palo Alto Town and Country Village, Inc., 584 F. Supp. 508 (D. Nev. 1984).   Because Gillespie has not alleged any violations of Nevada law, nor

_____

[22](...continued)
demonstrates how he calculated his interest rates.   See Doc. 5, p. 6.   This is a factual argument, inappropriate for consideration at the motion to dismiss stage.   Moreover, Gillespie has not included any allegations concerning this statement in his Amended Complaint, nor attached it to his Amended Complaint, so that the Court cannot consider this statement incorporated into his pleadings.   The Court also does not see anywhere on the partial copy of the September 20, 2004 statement an annual percentage rate of 0.00%, as Gillespie claims.

[23]HSBC Nevada has attached a copy of the Cardholder Agreement to its motion to dismiss. See Doc. 4, exhibit A.   Gillespie refers to his credit card contract with HSBC Nevada throughout his Amended Complaint, and many of the issues he references, such as interest charges, the effect of closing an account, and other fees and charges, are directly related to the Cardholder Agreement.   It is therefore clear that the Cardholder Agreement has been incorporated into the Amended Complaint, and may be considered by the Court without transforming the motion to dismiss into a motion for summary judgment.   Brooks v. Blue Cross & Blue Shield of Florida, 116 F.3d 1364, 1369 (11th Cir.  1997).

[24]Doc. 4, exhibit A, p. 4.

18

alleged that the Cardholder Agreement's choice of law provision somehow does not apply to this case, he has failed to state a claim upon which relief can be granted.  Gillespie's Florida usury claim will be dismissed without prejudice.[25]

### D.    Negligence Claim

Gillespie's final claim against HSBC Nevada is a common law claim for negligence under Florida law.  From the very brief allegations asserted, it appears that Gillespie is arguing that HSBC Nevada was negligent in hiring RMA to act as its debt collector with respect to Gillespie's credit card account, apparently because RMA is now in Chapter 11 bankruptcy and cannot be sued.[26]  To bring such a claim, Gillespie could pursue either a negligent hiring theory, or a common law negligence theory.  Gillespie's barebones claim does not specify the legal theory upon which it is predicated.  However, under either theory, Gillespie has failed to allege a claim upon which relief can be granted.

To allege a *prima facie* claim of negligent hiring, Gillespie must assert that:

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the

---

[25]Gillespie argues, without any legal support, that because he did not sign the Cardholder Agreement, it is void under the statute of frauds.  Doc. 5, p. 7.  Such a bald conclusory statement cannot save this claim from dismissal.  In addition, it is unclear from the Cardholder Agreement whether a signature is required for the Agreement to be enforceable.  It is also unknown whether Gillespie signed any papers consenting to this Cardholder Agreement at the time he opened his credit account.  These unresolved questions are all factual disputes, which cannot be decided on a motion to dismiss.

[26]Doc. 22, ¶ 96; Doc. 5, p. 8.

employer to hire the employee in light of the information he knew
or should have known.

Malicki v. Doe, 814 So.2d 347, 362 (Fla. 2002) (citing Garcia v. Duffy, 492 So. 2d 435, 440

(Fla. 2d DCA 1986)).   Gillespie's Amended Complaint does not allege any of these

elements.  In fact, he does not even establish or allege that RMA was HSBC Nevada's

employee.[27]

To the extent Gillespie is instead proceeding under a simple common law claim of

negligence, this claim also fails.  To allege a *prima facie* case of negligence, Gillespie must

aver that:  (1) HSBC Nevada owed a legal duty to Gillespie; (2) HSBC Nevada breached

that duty; (3) the breach legally caused an injury to Gillespie; and (4) damages resulted

from the injury.  See Pinchinat v. Graco Children's Prods., 390 F. Supp.2d 1141 (M.D. Fla.

2005).  Again, Gillespie has not alleged any of these elements, and has not responded to

any of HSBC Nevada's arguments challenging this negligence claim.

Because Gillespie has not alleged any of the elements necessary for either a *prima*

*facie* claim for negligent hiring or for common law negligence, his claim must be dismissed.

And while the Court has great doubts Gillespie could ever succeed on such a claim, the

Court will provide him with one more opportunity to properly allege this claim.

### E.    Punitive Damages and Attorneys' Fees

HSBC Nevada also requests to have Gillespie's claim for punitive damages in his

state law fraud claim stricken because it is based on "conclusory allegations in the absence

---

[27]The Court seriously doubts Gillespie could establish such a relationship in any event.

of a reasonable basis in fact to support a claim for fraud." <u>See</u> Doc. 4, p. 9 (citing <u>Porter v. Ogden</u>, 241 F.3d 1334, 1340 (11th Cir. 2001).  Because the Court has determined that Gillespie has sufficiently alleged a claim for common law fraud, his request for punitive damages may also go forward.

Gillespie has also included in his requests for relief under each of his claims a request for attorneys' fees and costs.  HSBC Nevada has moved to have Gillespie's request for attorneys' fees stricken, arguing that a *pro se* litigant is not entitled to attorneys' fees.  The Court agrees.  <u>See Kay v. Ehrler</u>, 499 U.S. 432 (1991); <u>Ray v. U.S. Dept. Of Justice</u>, 87 F.3d 1250 (11th Cir. 1996); <u>Celeste v. Sullivan</u>, 988 F.2d 1069 (11th Cir. 1992). The fact that Gillespie may have some paralegal experience or training is of no relevance. Accordingly, any requests on behalf of Gillespie for attorneys' fees shall be stricken, and Gillespie is instructed not to include any such requests if he chooses to file a second amended complaint.

### Conclusion

Accordingly, upon due consideration, it is hereby ORDERED and ADJUDGED that:

(1)     Defendants HSBC North America Holdings Inc.'s, and HSBC Bank Nevada, N.A.'s motion to dismiss (Doc. 4) is GRANTED IN PART AND DENIED IN PART.  All claims against Defendant HSBC North America Holdings Inc., to the extent any are alleged in the Plaintiff's First Amended Complaint (Doc. 22), are DISMISSED WITHOUT PREJUDICE.  Count IV of the Plaintiff's First Amended Complaint against Defendant

HSBC Bank Nevada, N.A. is DISMISSED WITHOUT PREJUDICE.  The Plaintiff may not recover attorneys' fees while proceeding *pro se*, and therefore all references to attorneys' fees are STRICKEN, and the Plaintiff may not assert any claims for attorneys' fees in any future pleadings. In all other respects the Motion to Dismiss (Doc. 4) is DENIED.

(2)     Defendants HSBC North America Holdings Inc.'s, and HSBC Bank Nevada, N.A.'s motion to dismiss negligence count (Doc. 29) is GRANTED.  Count V of the First Amended Complaint is DISMISSED WITHOUT PREJUDICE.

(3)     All claims against Defendant Risk Management Alternatives, Inc. are hereby stayed pending notice that the automatic stay under 11 U.S.C. § 362 has been lifted.

(4)     The Plaintiff shall have twenty (20) days from the date of this Order to file a second amended complaint correcting the deficiencies discussed in this Order.  Failure to submit an amended complaint within this time period will result in the dismissal with prejudice of the above-listed claims.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 25th day of September, 2006.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Neil J. Gillespie, *pro se*

22